IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

HEADLEY ROSE, et al.,

    Plaintiffs,

        v.                      CIVIL NO.: WDQ-10-2761

NEW DAY FINANCIAL,
LLC, et al.,

    Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Headley Rose, Bryan Harrison, Thomas Zwirecki, Ryan George, John Hamilton, Sean Stuart, Carmen Aumendo, and Chad Schneider (collectively "the plaintiffs") sued New Day Financial, LLC ("New Day"), Robert Posner, and LeeAnn Rodriguez (collectively "the defendants") for violations of the Fair Labor Standards Act ("FLSA") and Maryland law. For the following reasons, the defendants' motion to dismiss and compel arbitration will be granted.

I.    Background[1]

Rose, Harrison, Zwirecki, George, Hamilton, Aumendo, and Schneider are Maryland residents and former "Account Executives" for New Day, a Maryland corporation with offices in Maryland and Pennsylvania. Compl. ¶¶ 2-6, 8, 9, 16, 17.  Stuart, a New York resident, was also an Account Executive for New Day.  *Id.* ¶ 7. The Plaintiffs allege that New Day required them to work at least 65 hours per week, but did not pay them overtime.  *Id.* ¶¶ 19, 20.

As a condition of employment, each Account Executive was required to sign an "Arbitration Agreement" either in mid-2005 if they had worked for New Day before that time, or soon after they began employment. Pls.' Mem. in Op. 9; *id.* Ex. 1.  New Day did not inform any of the plaintiffs about the arbitration agreement before they were required to sign it, and provided about five minutes for each plaintiff to sign the agreement, or 40 minutes to sign a collection of forms including the agreement.  *Id.*

Zwirecki asked if he could take the agreement home to review or redact portions that he did not understand.  *Id.* at 11.  New Day denied his requests and told Zwirecki that if he

_____

[1] Because the motion to dismiss is construed as one for summary judgment, the plaintiffs' evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

did not sign the agreement he would not be permitted to work for New Day. *Id.* Each plaintiff signed. *Id.* Although several plaintiffs requested and were promised copies of the agreement, none received a copy. *Id.*

The arbitration agreement states that New Day and the employee:

> agree that any legal or equitable claims, disputes or controversies, between employee and NewDay, or between employee and any of NewDay's officers, directors, agents, employees, attorneys, or assigns, whether arising out of or in connection with the employment relationship, the terms and conditions of employment, or the termination of employment, will be submitted to and resolved by binding arbitration.

Defs.' Mem. in Supp. Ex. 1. The agreement states that "this agreement to arbitrate shall . . . includ[e] the applicability of this arbitration agreement and the validity of the entire agreement." *Id.*

The agreement prohibits the parties from participating in "a class action in court or in arbitration, . . . including claims arising under the Federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq.," and from "join[ing] or consolidat[ing] claims with any other claims asserted by any other person." Defs.' Mot. to Compel Ex. 1. It excepts either party's use of judicial "remedies in aid of arbitration . . . [or for] bankruptcy, replevin, judicial foreclosure, injunction, or any other pre-judgment or provisional remedy." *Id.*

3

The agreement states:

> NewDay shall advance the fees associated with filing
> and arbitrating any claims subject to this agreement.
> If NewDay is deemed to be the prevailing party by the
> arbitrator, then employee shall reimburse NewDay for
> the arbitration fees which NewDay has advanced, in
> addition to any other costs or expenses which NewDay
> Financial, LLC may otherwise have a right to recover
> under law. However, if employee produces an affidavit
> and other relevant evidence demonstrating to the
> satisfaction of the arbitrator that the employee . . .
> cannot reimburse NewDay for the arbitration fees that
> have been advanced, then NewDay shall pay all fees
> associated with arbitrating the claim.

Defs.' Mem. in Supp. Ex. 1.

The agreement states that it is governed by the Federal
Arbitration Act ("FAA"). *Id.* A paragraph above the signature
line states:

> BY SIGNING BELOW, THE PARTIES ACKNOWLEDGE THAT THEY
> HAD A RIGHT TO LITIGATE CERTAIN CLAIMS . . . AND THAT
> THEY WILL NOT HAVE THAT RIGHT IF EITHER PARTY ELECTS
> ARBITRATION PURSUANT TO THIS AGREEMENT . . . . THIS
> ARBITRATION AGREEMENT . . . INVOLVES NO SURRRENDER, BY
> EITHER PARTY, OF ANY SUBSTANTIVE STATUTORY OR COMMON
> LAW BENEFIT, PROTECTION, OR DEFENSE.

*Id.*

In 2009, nine former employees sued New Day in
Pennsylvania,[2] alleging the FLSA violations pled here. *Hopkins
v. New Day Financial*, 643 F. Supp. 2d 704, 708 (E.D. Pa. 2009).
New Day moved to dismiss and compel arbitration, relying on the
arbitration agreements. *Id.* As here, the former employees

---

[2] None are plaintiffs in the present case. *Compare Hopkins*, 643
F. Supp. 2d at 704, *with* Compl. caption.

argued that the arbitration agreement was unenforceable because
it was unconscionable. *Id.* at 715.

Applying Pennsylvania common law,[3] United States District
Judge Joel H. Slomsky held that there was a "genuine issue of
material fact as to whether the Arbitration Agreements are
unconscionable." *Id.* Judge Slomsky denied the motion to compel
arbitration and ordered a trial on the issue of
unconscionability. *Id.* at 721. At trial, the parties disputed
whether the ban on class action prevented employees from
resolving disputes, and the jury found that the arbitration
agreements were unconscionable as applied to eight of the nine
former employees. Defs.' Rep. 3-6; *id.* Ex. 2.

On October 5, 2010, the plaintiffs sued the defendants in
this Court for violating the FLSA and the Maryland Wage and Hour
Law. ECF No. 1. On November 9, 2010, the defendants moved to
dismiss and compel arbitration. ECF No. 8.

---

[3] Judge Slomsky considered whether Pennsylvania or Maryland law
would govern the validity of the agreement, and held that "both
states employ *almost* identical definitions of unconscionability,
consisting of both procedural and substantive aspects, there is
no conflict between Maryland and Pennsylvania laws in this
respect." *Hopkins*, 643 F. Supp. 2d at 715 (emphasis added).
The court relied on both states' requirement of substantive
unfairness, i.e., a lack of meaningful choice by one party, and
procedural unfairness, i.e., the terms of the agreement
"unreasonably favor" one party. *Id.* at 714-15.

II. Analysis

A. Standard of Review

Motions to compel arbitration in which the parties dispute the validity of the arbitration agreement are treated as motions for summary judgment. *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683-84, 684 n.1 (D. Md. 2004).[4] Therefore, such motions "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable

---

[4] The FAA applies to all written agreements to settle controversies arising out of the contract or the transactions by arbitration in contracts involving transactions in interstate commerce. 9 U.S.C. § 2 (2006). The plaintiffs do not dispute that the agreement is governed by the FAA, which requires the court, on application of a party, to stay the trial if the action is referable to arbitration. 9 U.S.C. § 3. If all the issues in the action are arbitrable, the court may dismiss the action when it orders arbitration. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001).

inferences in h[is] favor," *Dennis v. Columbia Collection Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but it also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citations and internal quotation marks omitted).

    B.    The Defendants' Motion to Dismiss and Compel
           Arbitration

New Day has moved to dismiss and compel arbitration. The plaintiffs argue that New Day's Motion should be denied because the arbitration agreements are unconscionable. To compel arbitration, the movant must show:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [other party] to arbitrate the dispute.

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2001); *see also Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001). Only the second element is disputed. Pls.' Resp. 2.[5]

---

[5] If the parties dispute the existence of an arbitration agreement, the court must "hear the parties" on the issue, and the party alleged to have violated the arbitration agreement is entitled to a jury trial on the existence of an agreement. 9

Arbitration agreements governed by the FAA are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 3 (2006). The validity of an arbitration agreement is determined under state contract formation law. *AT&T Mobility, Inc. v. Concepcion*, 131 S. Ct. 1740, 1745-46 (2011); *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540 (4th Cir. 2005).

1.   Choice of Law

Under the FAA, the Court must apply the "federal substantive law of arbitrability," which directs the Court to rely on "ordinary state-law principles that govern the formation of contracts" to determine whether the parties agreed to arbitrate. *Hill*, 412 F.3d at 543 (internal citations and quotation marks omitted); *see also AT&T Mobility, Inc.*, 131 S. Ct. at 1745-46.

Applying Maryland choice of law rules, the Court must first determine what state law governs formation of the arbitration agreement. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Maryland uses the *lex loci contractus* rule: "the law of the jurisdiction where the contract was made controls its validity and construction." *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390, 535 A.2d 466, 467 (1988).

U.S.C. § 4.   Standard summary judgment rules apply. *Shaffer*, 321 F. Supp. 2d at 684 n.1.

Because plaintiffs Rose, Stuart, George, and Zwirecki signed the arbitration agreements in Maryland, Maryland law governs their agreements.[6]  Pls.' Mem. in Op. Ex. 1.

Neither party has addressed Schneider's statement that he signed the arbitration agreement in Pennsylvania, *Id.* Ex. 1, and Hamilton, Aumendo, and Harrison, have not indicated where they signed the agreements.  Pls.' Mem. in Op. Ex. 1.  Thus, for at least Schneider, this Court must look to Pennsylvania's law, including its choice of law rules to determine the governing law.[7]  *See Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 574, 659 A.2d 1295, 1302 (1995).

i.   Pennsylvania Choice of Law

Although the Pennsylvania Supreme Court has not expressly rejected the traditional rule of *lex locus contractus*, the Third Circuit has predicted that the Pennsylvania Supreme Court would

---

[6] "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs."  *Konover Prop. Trust, Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (Md. Ct. Spec. App. 2002).

[7] A state's "body of substantive law" includes its choice of law rules.  *Am. Motorists Ins. Co.*, 338 Md. at 1302, 659 A.2d at 574.  Maryland will apply its own substantive law even if its choice of law rules direct the application of another state's law if (1) Maryland has a substantial relationship to the contract issue at bar, and (2) the state where the contract was made would apply Maryland law rather than its own law.  *Id.*, 338 Md. at 1304, 659 A.2d at 579.  This doctrine avoids the possibility of an "endless cycle" of remissions between the states' choice of law provisions.  *Id.*, 338 Md. at 1302, 659 A.2d at 574.

9

reject it and apply the law of the state with (1) the greatest interest in having its law applied and (2) most contacts with the case.[8] *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 227-29 (3d Cir. 2007). Pennsylvania's lower courts have also consistently applied an interest and contacts choice-of-law analysis to contract cases. *See, e.g., Wilson v. Transp. Ins. Co.*, 889 A.2d 563, 571 (Pa. Super. Ct. 2005). This Court will do the same.[9]

Under this analysis, the Court must first determine whether the laws of Pennsylvania and Maryland conflict. If they do not, no choice of law analysis is necessary and the Court may apply the common rule. *Hammersmith*, 480 F.3d at 230. If the laws have "relevant differences," the Court must determine whether either state's interests would be harmed by applying the other state's law. *Id.* If only one state's interests would be harmed, the Court applies the law of that state. *Id.* If neither state's interests would be harmed, the Court uses the *lex locus contractus* rule. *Id.* at 230 n.9. If both states' interests would be harmed, the Court will apply the law of the state with the greater interest in the application of its law. *Id.* at 231.

---

[8] The Pennsylvania Supreme Court has adopted that approach in torts cases. *Hammersmith*, 480 F.3d at 227.

[9] The Court may consider lower state court and federal appellate decisions to predict the law of Pennsylvania's highest court. *Hammersmith*, 480 F.3d at 227-28.

10

ii.   Conflict Determination

The parties dispute whether the arbitration agreement is
void as unconscionable because, among other things, it bars
collective action.  Defs.' Mem. in Supp. 4-6; Pls.' Mem. in Op.
17-23.  Accordingly, the Court must compare Maryland and
Pennsylvania's standards for contract unconscionability.

In Maryland, a contract is unconscionable if it is
procedurally unconscionable, evidencing "one party's lack of
meaningful choice" in making the contract, and substantively
unconscionable, containing terms that "unreasonably favor" the
more powerful party. *Walther v. Sovereign Bank*, 386 Md. 412,
426, 872 A.2d 735, 744 (2005).

In Pennsylvania, the test is whether "there was a lack of
meaningful choice in the acceptance of the challenged provision"
and "the provision unreasonably favors" the contract's
proponent.  *Salley v. Option One Mortg. Corp.*, 592 Pa. 323, 331,
925 A.2d 115, 119 (2007).

However, the states differ about whether class action bars
in arbitration agreements are unconscionable.  In Maryland an
express waiver of the right to collective action will be
enforced, even if it increases the expense of pursuing a claim.[10]

---

[10] In Maryland prohibitive cost is a distinct form of
unconscionability, to be analyzed separately from the class-
action terms of the contract.  *Walther*, 872 A.2d at 751-52, 386

*Walther*, 386 Md. at 436-38, 872 A.2d at 750-51.  In Pennsylvania

class-action waivers "are unconscionable . . .  when they

prohibit individual[s] . . . from obtaining relief due to

prohibitive cost."  *Quilloin v. Tenet HealthSystem Phila., Inc.*,

763 F. Supp. 2d 707, 727 (E.D. Pa. 2011) (citing *Thibodeau v.*

*Comcast Corp.*, 912 A.2d 874, 885-86 (Pa. Super. Ct. 2006)).

Because these standards have "relevant differences," the Court

must continue the conflicts analysis. *See Hammersmith*, 480 F.3d

at 230.

### iii. Effect of the Conflict

After determining that the laws of the states differ, the

Court asks whether either state's interests would be harmed by

applying the other state's law.  *Hammersmith*, 480 F.3d at 230.

The Court considers the kind of entity each state's law

protects.  *See id.* at 232.

Pennsylvania's law is more protective of, and favors,

individuals with lesser bargaining power: it resists enforcement

of the class-action bans.  *See Quilloin*, 763 F. Supp. 2d at 727.

Pennsylvania also protects individuals by encouraging class

action litigation when individual suits would be impracticable.

*Thibodeau*, 912 A.2d at 885-86.

---

Md. at 439-40.  The Plaintiffs do not rely on those grounds
here.  Pls.' Mem. in Op. 22-25.

Maryland's law favors the drafter by rigorously enforcing arbitration agreements. *See Walther*, 386 Md. at 438, 872 A.2d at 750. Maryland courts "cannot ignore the strong policy, made clear in both federal and Maryland law, that favors the enforcement of arbitration provisions." *Id.*, 386 Md. at 438, 872 A.2d at 751.

Here, no plaintiffs are citizens of Pennsylvania. Compl. ¶¶ 2-9. Thus, Pennsylvania's aversion to class-action bars will not be harmed if the bar is enforced. *See Hammersmith*, 480 F.3d at 232. New Day, the drafter of the agreement, is a Maryland corporation. Compl. ¶ 10. Maryland law favors the drafters, and the state has an interest in applying its law in this case. *See Hammersmith*, 480 F.3d at 232. Maryland also has a substantial relationship to the case, as most of the plaintiffs, and the defendants, are Maryland citizens and the plaintiffs worked primarily in Maryland. Compl. ¶¶ 2-10.

Because Pennsylvania's interests will not be harmed by applying Maryland law—but Maryland's interests would be harmed by applying Pennsylvania law—Pennsylvania courts would apply Maryland law to this claim. *See Hammersmith*, 480 F.3d at 230. Because Maryland has a substantial relationship to the claim, Maryland courts would also apply Maryland's law to the issue. *See Am. Motorists Ins. Co.*, 338 Md. at 1304, 659 A.2d at 574. Accordingly, Maryland substantive law will govern the validity

13

of the arbitration agreements for all the plaintiffs, including those who signed the agreement in Pennsylvania.

                    2.    Effect of *Hopkins v. New Day Financial*, 643 F.
                          Supp. 2d 704 (E.D. Pa. 2009)

The plaintiffs argue that the Defendants are collaterally estopped from relying on the arbitration agreement because of *Hopkins*. Pls.' Resp. 1-2.

Collateral estoppel bars relitigation of an issue determined in an earlier proceeding when:

> (1) the issue sought to be precluded is identical to
> one previously litigated; (2) the issue . . . ha[s]
> been actually determined in the prior proceeding; (3)
> determination of the issue [was] a critical and
> necessary part of the decision in the prior
> proceeding; (4) the prior judgment [is] final and
> valid; and (5) the party against whom estoppel is
> asserted . . . had a full and fair opportunity to
> litigate the issue in the previous forum.

*Sedlack v. Braswell Svc's Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1993).[11] The defendants contend that the first and fifth factors do not favor estoppel.

                    i.    Identity of Issues

The defendants argue that the issues in this case differ from *Hopkins* because (1) there was a mixed verdict, (2) the nature of the Pennsylvania legal market was disputed there, and

---

[11] The federal law of collateral estoppel governs this Court's
decisions of federal questions. *Heck v. Humphrey*, 512 U.S. 477,
488 n.9 (1991).

                              14

(3) the *Hopkins* court applied Pennsylvania law. Defs.' Reply 8-9.

Issues are not identical if the governing laws differ.[12] In *Hopkins*, the court applied Pennsylvania law to determine whether the arbitration agreement was unconscionable. *Hopkins v. New Day Financial*, 643 F. Supp. 2d 704, 715 (E.D. Pa. 2009). Although the court noted that Maryland law is similar to the Pennsylvania law of unconscionability, *id.* at 715, the court did not apply Maryland law, which, unlike Pennsylvania, does not consider class-action bars as unconscionable. Thus, the legal standard here differs from *Hopkins*, and collateral estoppel does not bar relitigation.[13]

ii. Identity of Parties

Collateral estoppel does not bar Rodriguez's suit. A party has had a full and fair opportunity to litigate an issue only if

---

[12] *Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002); *cf. Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 218 (4th Cir. 2006) (collateral estoppel does not apply when a change in the law "could render the previous determination inconsistent with prevailing doctrine").

[13] Unconscionability may also require a fact-intensive analysis, as the plaintiffs recognize, Pls.' Mem. in Op. 20, because it depends on the circumstances in which the agreement was presented to each plaintiff. Although the plaintiffs were presented with the arbitration agreements under circumstances *similar* to those in *Hopkins*, the Plaintiffs do not assert that they were at the same meetings as the *Hopkins* employees. As the defendants note, the mixed verdicts in *Hopkins* also demonstrate that the issue can differ for each plaintiff and must be relitigated. *See* Defs.' Resp. 8-10.

she was a party in the prior suit, or is within certain limited circumstances. *See Taylor v. Sturgell*, 553 U.S. 880, 892-96 (2008). Under one of these exceptions, a non-party (from a prior case) will be deemed to have had a full and fair opportunity to litigate an issue if she was "adequately represented by someone with the same interests who was a party to the suit." *Id.* at 894 (internal citations and quotation marks omitted). This exception is generally limited to members of a class in a class action suit and parties who had a legal duty to represent the interests of the non-party.[14] *See id.* A company's interests are identical to those of its officers, and an officer will be bound by issues the company litigated. *Cf. Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 848 (7th Cir. 2010) ("an order issued to a corporation is identical to an order issued to its officers").

A non-party is also bound if she (1) agrees to be bound, (2) had a pre-existing "substantive legal relationship" with a party,[15] (3) took control of the prior litigation, (4) litigates

---

[14] For example, "trustees, guardians, and other fiduciaries." *Taylor*, 553 U.S. at 894.

[15] The relationships include preceding and succeeding property owners, bailee and bailor, and assignee and assignor, and are

as a proxy for a party, or (5) a statute prohibits successive litigation by non-litigants. *Taylor*, 553 U.S. at 894-95.

Rodriguez was not a party in *Hopkins*. *See* 643 F. Supp. 2d at 708 (listing the defendants). However, she is an officer of New Day, a *Hopkins* party. If New Day had been barred from relitigating, Rodriguez would also be barred.

Because the issues are identical, the Defendants are not barred from litigating the unconscionability of the agreement.

2.    Unconscionability

Under Maryland law, an unconscionable contract is void. *See Walther v. Sovereign Bank*, 386 Md. 412, 426, 872 A.2d 735, 743 (2005). Maryland courts require that a showing of procedural unconscionability—"one party's lack of meaningful choice" in making the contract—and substantive unconscionability—contract terms that "unreasonably favor" the more powerful party—to void the contract. *Id.*, 386 Md. at 426, 872 A.2d at 744.

i.    Procedural Unconscionability

The plaintiffs argue that the arbitration agreement is procedurally unconscionable because they were given little time to review the terms, were not permitted to consult with others about the meaning of the agreement, and were told that they

_____

generally limited to property law issues.  *Taylor*, 553 U.S. at 895.

17

would lose their jobs if they did not sign it. Pls.' Mem. in Op. 18-19. They contend that the agreement was an adhesion contract, and the defendants intended to avoid explaining its terms to them. Pls.' Mem. in Op. 19-21.

In Maryland, "'the law presumes that a person knows the contents of a document that he executes and understands at least the literal meaning of its terms.'" *Walther*, 386 Md. at 429, 872 A.2d at 745 (quoting *Merit Music Serv., Inc. v. Sonneborn*, 245 Md. 213, 221-22, 225 A.2d 470, 474 (1967)).[16]

---

[16] A party's failure to thoroughly review an agreement before signing it does not make the agreement procedurally unconscionable. *Walther, 386 Md. at* 428, 430, 872 A.2d at 745. "There must exist something more before we can find the arbitration clause . . . to be unconscionable." *Id.*, 386 Md. at 430, 872 A.2d at 745. Even if a party *could not* take the time to understand an agreement, he will be bound by the agreement. *Dieng v. College Park Hyundai*, DKC 09-0068, 2009 WL 2096076 at *5 (D. Md. July 9, 2009). "In its simplest terms, Plaintiffs argue that they should not be held to an agreement that they signed, but did not have or take the time to read and understand. Plaintiffs' argument has no merit." *Dieng*, 2009 WL 2096076 at *5. Further, an arbitration agreement is not procedurally unconscionable merely because it was not mentioned or provided to employees before they began work, even if signing was a condition of employment, and the employees "needed time [they were not given] to consult with counsel" to understand the document. *Id.* In *Dieng*, the plaintiffs, former employees of a car dealership, sued the dealership for violations of the FLSA and Maryland law based on alleged company requirements that the employees work 40-60 hours per week without full overtime payment. *Dieng*, 2009 WL 2096076 at *1-2. The employer filed a motion to dismiss and compel arbitration, based on an arbitration agreement that the employees were required to sign on their first day of work, as a condition of employment. *Id.* at *1. The employees argued that the agreement was procedurally and substantively unconscionable because they were not given sufficient time to read and understand the agreement before they

However, contracts of adhesion—those "offered on a take-it-or-leave-it basis, with no opportunity for negotiation"—are *procedurally* unconscionable under Maryland law and enable a substantively unconscionable challenge to the contract. *Walther*, 386 Md. at 430, 872 A.2d at 746.

The plaintiffs argue that the arbitration agreement is a contract of adhesion because New Day presented the agreements to them on a take-it-or-leave-it basis, with no chance to negotiate the terms. *Id.*, 386 Md. at 430, 872 A.2d at 746. The plaintiffs have presented evidence that they were given the agreement in final form and had no part in drafting it. Pls.' Mem. in Op. 18-19. Further, when Zwirecki asked if he could cross out clauses he did not understand, New Day "told [him] that the documents had to be signed *as is*, without any cross-outs." Pls.' Mem. in Op. Ex. 1 (emphasis added). Accordingly, a reasonable fact finder could conclude that the arbitration agreements are procedurally unconscionable contracts of adhesion. *See Shaffer*, 321 F. Supp. 2d at 683-84, 684 n.1.

ii. Substantive Unconscionability

The plaintiffs argue that the arbitration agreements are substantively unconscionable because they (1) contain a class

_____

were required to sign it, the employer failed to explain the agreement to them, and the agreement was "replete with vague and ambiguous language which no one but those involved in the drafting of the document could ascertain." *Id.* at *4. The court granted the motion to dismiss and compel. *Id.* at *1.

action waiver, (2) contain an illusionary promise, and (3) grant unequal access to the courts. Pls.' Mem. in Op. 23-25.

a.    Waiver of a Substantive Right

The plaintiffs argue that the right to collective action is substantive and may only be knowingly waived. Pls.' Mem. in Op. 23. In support, the plaintiffs rely on Federal cases—decided under Pennsylvania law—which held that when a party signs away substantive rights without reading or understanding what he is signing, his waiver is not knowing or enforceable. *Id.* (citing *Hopkins*, 643 F. Supp. 2d at 719; *Ellis v. Edward B. Jones & Co., L.P.*, 527 F. Supp. 2d 439 (W.D. Pa. 2007)).

These cases conflict with Maryland law. First, as discussed above, Maryland law presumes that parties read and understand the contracts they sign. *Walther*, 386 Md. at 429, 872 A.2d at 745. Here, the class action ban is contained in the main text of the agreement for the employees to read. Defs.' Mem. in Supp. Ex. 1. It is no more inconspicuous than other class action waivers that Maryland courts have upheld.[17]

---

[17] The plaintiffs have attempted to distinguish *Walther*. They note that *Walther* involved a no-class-action clause that was "conspicuously presented as part of the arbitration clause." *Id.*, 386 Md. at 438, 872 A.2d at 750. The reference to collective action in that agreement was no more conspicuous than the reference in the agreement here. The *entire* arbitration clause in *Walther* was set off from the loan disclosure agreement that contained the clause, but the collective action ban was *not* set apart from the remainder of the arbitration clause. *Id.*,

Further, the Court of Appeals of Maryland has determined
that collective action waivers in arbitration agreements are
valid if the agreement is "freely-signed." *Walther*, 872 A.2d at
750, 386 Md. at 438. The Court of Appeals "would be averse to a
holding" otherwise. *Id.* Maryland courts "cannot ignore the
strong policy, made clear in both federal and Maryland law, that
favors the enforcement of arbitration provisions." *Id.*, 386 Md.
at 438, 872 A.2d at 751.

b.     Illusionary promise

The plaintiffs also argue that the agreement, by its own
terms, cannot take away the right to collective action because
the agreement states that both parties would "retain all
substantive legal rights and remedies." Pls.' Mem. in Op. 24.
As discussed above, the plaintiffs argue that the limitation on
collective actions restrains a substantive legal right, and thus
conflicts with this clause. *Id.*

---

872 A.2d at 739, 386 Md. at 418-19. Both were "buried in single
space." Pls.' Mem. in Op. 26.
    The plaintiffs argue that *Walther* is also distinguishable
because the underlying claim in that case did not involve "any
statutory or substantive right to bring a collective action or
join in a collective action," as, they claim, the FLSA creates.
Pl. Mem. in Op. 25-26. The plaintiffs rely on 29 U.S.C. §
216(b) for the right to bring a collective action or join in a
collective action. *Id.* However, the Fourth Circuit has
determined that the FLSA's right to collective action *can* be
waived in contracts of adhesion such as employment arbitration
agreements. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503
(4th Cir. 2001). As in *Adkins*, that the plaintiffs were not
aware of their right to class action does not render the
agreement substantively unconscionable. *See id.*

Any internal inconsistency of the agreement is a matter for the arbitrator to consider. *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (holding that all issues *other* than arbitrability, such as fraud in the inducement, are for the arbitrator to decide after a court has determined that the arbitration agreement is valid). An internal inconsistency does not destroy the enforceability of the agreement, and is not relevant to New Day's motion to compel. *Id.*[18]

c. Unequal Access to the Courts

Finally, the plaintiffs argue that the agreement unreasonably favors New Day because of the lack of mutuality in court access. Pls.' Mem. in Op. 25. They contend that the agreement allows New Day to file "many types of actions" in court while the Plaintiffs have no equivalent exceptions to the arbitration requirement. *Id.* The plaintiffs argue that because

---

[18] To the extent the plaintiffs challenge the clause as an illusionary promise that undermines the *consideration* for the agreement, their argument also fails. An illusionary promise is one that "appears to be a promise, but it does not actually bind or obligate the promisor to anything." *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 378 Md. 139, 149, 835 A.2d 656, 662 (2003). Illusionary promises cannot provide consideration for an agreement. *Id.*

Assuming, *arguendo*, that the retention of legal rights clause is an illusionary promise, this fact does not render the agreement substantively unconscionable because that clause does not form the consideration for the agreement. In arbitration agreements, the exchanged promises to arbitrate constitute the consideration that forms the basis of the agreement. *See Dieng*, 2009 WL 2096076 at *3.

New Day has shown no valid basis for the exceptions, the agreement lacks mutuality and is substantively unconscionable. *Id.*

Mutuality "does not require an exactly even exchange of identical rights and obligations" between the parties. *Walther*, 386 Md. at 433, 872 A.2d at 748.[19]

The plaintiffs argue *Walthers* is not determinative because the exception was narrower there. Pls.' Mem. in Op. 26. However, arbitration agreements that more frequently bind the employee than the employer are valid despite the differences in the parties' rights. *See Adkins*, 303 F.3d at 501-503.

The FAA mandates that "courts cannot treat arbitration in general as an inferior or less reliable means of vindicating important substantive rights." *Id.* at 502 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985)). That an agreement restricts a party's access to a court does not make it unfair; the arbitration is not inferior to the courtroom. *Id.*

Because there is no genuine dispute of material fact that the arbitration agreement is substantively unreasonable, it will be enforced, and New Day's motion will be granted.

---

[19] E.g., an exception to an arbitration agreement in a loan contract allowing the lender to exercise a judicial foreclosure remedy was valid even though the debtor retained no similar right to judicial remedies. *Walther*, 386 Md. at 433, 872 A.2d at 748.

III. Conclusion

For the reasons stated above, the defendants' motion to dismiss and compel arbitration will be granted.

_____9/8/11_____
Date

_____
William D. Quarles, Jr.
United States District Judge